OHIO & MISSISSIPPI RAILWAY COMPANY
v.
CHARLES W. SAVAGE.

*Railroads—Excessive Freight Charge—Station Agent—Representations of as to Rates.*

In an action brought by a shipper of grain to recover excess of a freight charge over and above a rate alleged to have been agreed upon, it is *held:* That upon the case presented the shipper had a right to rely upon the representations of a station agent as to rates, and that the company was bound thereby.

[Opinion filed September 20, 1890.]

APPEAL from the Circuit Court of Cass County; the Hon. LYMAN LACEY, Judge, presiding.

Messrs. POLLARD & WERNER and HENRY PHILLIPS, for appellant.

The burden of proof was on the plaintiff to show that Black had authority to make the reduced rate which he claims was given him.

One who deals with an agent must know the extent of his authority. Garrels v. Morton, 26 Ill. App. 433; Boltz v. Huston, 23 Ill. App. 579; Baxter v. Lamont, 60 Ill. 237; Peabody v. Hoard, 46 Ill. 242; Stiger v. Bent, 111 Ill. 328.

The evidence clearly shows that Mr. Black had no authority from the company to fix rates on freight; he certainly had no express authority, as he testified that he had none, and it is

equally clear that no such authority can be implied from his position or previous course of dealing between the parties Mr. Black was local agent of the defendant at Virginia. Such agents have no general authority to fix special rates for shipments from their own stations, and none of the corn in this case was shipped from the Virginia station. There is no evidence of any previous dealings with Mr. Savage. The evidence is conclusive, therefore, that Mr. Black had no authority to agree with plaintiff for a ten cent rate, even if he did make such an agreement or give such a rate.

Mr. R. W. Mills, for appellee.

From the testimony there can be no doubt that Savage was induced by the conversation with Black to ship his corn to Cincinnati under the belief that a ten-cent rate would be put in. There is a conflict of evidence. Savage swears that the agent told him to go ahead and load the grain and the rate would be put in. The agent denies that he made a contract for a ten cent rate, but does not deny that he used the language attributed to him by Savage. It may be that this circumstance was regarded by the jury as sufficient to create a preponderance in favor of the plaintiff below, which they clearly had the right to do. Ill. & St. L. R. R. & Coal Co. v. Ogle, 92 Ill. 353.

"It will not do to say, as a matter of law, that there can be no preponderance of the evidence in favor of the party holding the affirmative when there are but two witnesses upon the facts in issue and one testifies contrary to the other. In such cases the court or the jury are the judges of the credibility of the testimony." Boylston v. Bain, 90 Ill. 283; Herring v. Poritz, 6 Ill. App. 208.

There is another undisputed fact in the record that is sufficient to create a preponderance of the evidence in favor of the plaintiff below. Savage in his redirect examination testifies that at this time he could not ship corn to Cincinnati on a twelve cent rate without loss; yet he deliberately loads and ships ten cars and sends five others which had been loaded for shipment to other points. Can the court say that this circum-

stance was not sufficient to enable the jury to say that the evidence preponderates in favor of the plaintiff? Again, from the letter from the general freight agent to Black, it appears that the road was getting no corn from these points to Cincinnati and Louisville, and that the company was anxious to do something that would move the business. It strongly intimates that if a ten cent rate on corn alone, would move it, that rate would be made. May not the jury have believed that Black, when he found that the rate would answer the purpose, was so confident that the rate would be made that he used the language attributed to him by Savage, and thereby induced Savage to ship his grain, supposing that the rate would be put in? If they did so believe they had a right to give the testimony of Savage greater weight than that of the agent.

The question as to the general authority of Black to make special rates does not necessarily arise in this case. The application for a reduced rate was made to Hodgdon, whose authority to make a special rate is unquestioned, who, instead of replying to Savage direct, committed the matter to Black by the letter in evidence, and in the discharge of the duties imposed upon him by that letter, he told Savage to go ahead and load his grain and he should have a ten cent rate.

Having induced Savage to treat with Black without notice of any limitation upon his authority, the company is bound by his acts. Bank Bros. et al. v. ——, 35 Kas. 687; Parsons on Contracts, 44; Story on Agency, 127.

Besides, Savage swears that Hodgdon led him to believe that the rate would be reduced; and it is not surprising that he should be expecting the reduction, or that he acted upon what Black said to him.

WALL, J.   The plaintiff recovered a judgment against the defendant for $95.78, for an alleged overcharge of two cents per hundred pounds on about fifteen carloads of corn shipped over defendant's road, from certain stations in Cass county to Cincinnati.

The only evidence was the testimony of the plaintiff and of Mr. Black, the station agent of defendant at Virginia, where

plaintiff resided, and was engaged in shipping grain, etc.   The two witnesses are in conflict upon the important point whether Black informed the plaintiff that he could have a ten cent rate on the grain in question, the regular rate being twelve cents.   The jury settled this conflict by giving credit to the plaintiff, and there is no sufficient reason for setting aside the conclusion thus reached.   The question remaining is, whether, assuming the facts to be as stated by the plaintiff, he is to be affected by the further fact that Black had no authority to make the rate.   It is shown that the division freight agent, Hodgdon, was the person to do this, and that Black had no such authority.   It appears, however, that Hodgdon wrote to Black on the subject, inquiring whether he thought a ten cent rate would get the business, and according to plaintiff's testimony, there had been previously some talk and correspondence about the matter.   Plaintiff says that after this, Black went to his place of business one day, having " a telegram about some corn," and asked him how much corn he had to go, and whether a ten cent rate would take it out. Plaintiff informed him what he had at the stations named, and that " a ten cent rate would allow him to pull through," and Black said he had just got a letter from Hodgdon, and "if the ten cent rate will take it, we will take the stuff," and then told him to go ahead and load the train.   This all referred to Cincinnati as the place of destination. · Plaintiff then said he had three or four cars loaded at Gurney, which he would like to include.   To this Black assented.   The plaintiff then had the other cars loaded, but when he wanted them billed, Black said the rate matter was not in shape, and finally told him that Hodgdon was " trying to craw-fish out of that rate."   Plaintiff said it was " a pretty time for him to craw-fish," and that the grain must go; he then sent it forward, and having paid the regular rate of twelve cents, brought this suit for the two cent difference.

It is not necessary to discuss the general proposition that one dealing with an agent must at his peril know the extent of the agent's authority or the exceptions, where from the usual course of things or from previous transactions authority may

be implied or presumed. In the case of a railroad company the agent who is put up to represent the company in a particular capacity is for that purpose the company itself. In this instance the station agent held such a position that the plaintiff was justified in relying upon his representation in reference to the shipment of this grain. While the plaintiff knew that this agent had, necessarily, limited powers, yet he knew that he was the mouth-piece of the company, and more particularly of Hodgdon, at that place, in regard to matters of local business, and the company should not be permitted to say that the agent misunderstood or misrepresented his instructions. The company can act only through the medium of agents, and the plaintiff, having relied upon the statement of this agent as to a matter in which it was reasonable to depend upon his declarations, may hold the company bound to comply therewith.

The judgment will be affirmed.        *Judgment affirmed.*